UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON S.,[1] | ) | CIVIL ACTION NO. 4:21-CV-1598 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[2] | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Jason S., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On June 6, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 16; Doc. 14-2, p. 17).[3]  In this application, Plaintiff alleged he became disabled on August 9, 2018, when he was forty-four years old, due to the following conditions: stenosis of the spine, degenerative disc disease, herniated discs, chronic bronchitis, and depression. (Admin. Tr. 201; Doc. 14-6, p. 3). The majority of Plaintiff's limitations are the result of his back pain. Plaintiff has had three surgeries to address this impairment, and despite those surgeries his back pain and other impairments continue to affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb

---

[3] Citations to the certified administrative transcript refer first to the bates numbers assigned by the Social Security Administration ("Admin. Tr.") and then to the document and page number assigned through the Court's Electronic Case File System ("Doc.").

stairs, complete tasks, and concentrate. (Admin. Tr. 224; Doc. 14-6, p. 26). Plaintiff completed high school and attended a trade school where he studied lumber inspection. (Admin. Tr. 27; Doc. 14-2, p. 28); (Admin. Tr. 202; Doc. 14-6, p. 4); (Admin. Tr. 46; Doc. 14-2, p. 47). Before the onset of his impairments, Plaintiff worked as a lumber handler, machine mechanic, and lumber scaler. (Admin. Tr. 26; Doc. 14-2, p. 27).

On September 16, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 16; Doc. 14-2, p. 17). On December 12, 2019, Plaintiff's application was denied at the reconsideration level of administrative review. *Id.* On January 8, 2020, Plaintiff requested an administrative hearing. *Id*.

On January 4, 2021, Plaintiff, assisted by his counsel, appeared and testified during a telephone hearing before Administrative Law Judge Daniel Balutis (the "ALJ"). *Id.* On January 14, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 28; Doc. 14-2, p. 29). On February 15, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 184; Doc. 14-4, p. 62). Along with his request, Plaintiff submitted one page of new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 7; Doc. 14-2, p. 8).

On July 27, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 14-2, p. 2). It addressed the new evidence as follows:

> You submitted [a] Narrative letter from Dr. Charles Kovalchick, DO, dated March 10, 2021 (1 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(Admin. Tr. 2; Doc. 14-2, p. 3).

On September 15, 2021, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff asks that the court set aside the ALJ's decision and grant his application for benefits. *Id.*

On December 8, 2021, the Commissioner filed an answer. (Doc. 13). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 13, ¶ 8). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 14).

Plaintiff's Brief (Doc. 15) and the Commissioner's Brief (Doc. 20) have been filed.  Plaintiff did not file a reply. This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. We will also discuss the general standards relevant to the arguments Plaintiff raised in his brief.

## A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[4] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[6] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[7] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[8] In determining if the Commissioner's decision is supported by substantial evidence the court may consider any evidence in the administrative record.[9] However, the claimant and Commissioner are obligated to support each

---

[4] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[5] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[6] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[7] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[8] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[9] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

contention in the argument section of their briefs with specific reference to the page of the record relied upon.[10]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[11]

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court

---

[10] L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821085 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

[11] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[12] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[13]

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[14]

---

[12] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[13] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[14] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[15]   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[16] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[17]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[18]   Under this process, the ALJ must

---

[15] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on January 14, 2021.

[16] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[17] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[18] 20 C.F.R. § 404.1520(a)

sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[19]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[20] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[21]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[22] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could

---

[19] 20 C.F.R. § 404.1520(a)(4).

[20] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[21] 20 C.F.R. § 404.1545(a)(2).

[22] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

perform that are consistent with the claimant's age, education, work experience and RFC.[23]

## C.   GUIDELINES FOR THE ALJ'S EVALUATION AT STEP THREE OF THE SEQUENTIAL EVALUATION PROCESS

At step three of the sequential evaluation process, the ALJ considers whether the combination of the claimant's medically determinable impairments meets or medically equals the severity of one of the impairments listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").[24] This step functions to identify those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background, making further inquiry unnecessary.[25]

At this step, the claimant bears the burden of producing medical findings that show his or her impairments meet or medically equal a listed impairment.[26] To meet

---

[23] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

[24] 20 C.F.R. § 404.1520(a)(4)(iii).

[25] 20 C.F.R. § 404.1525(a) (explaining that the Listing of Impairments "describes for each of the major body systems impairments that we consider to be severe enough to precent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."); *Sullivan v. Zebley*, 439 U.S. 521, 532 (1990) ("The Secretary has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. . . . The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.").

[26] *Burnett*, 220 F.3d at 120 n.2.

this burden, the claimant must establish that he or she meets *all* requirements of the relevant listing.[27] An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not enough.[28] The Listings are strictly construed because meeting or equaling a listing at step three results in an automatic finding of disability.

### D. GUIDELINES FOR THE ALJ'S EVALUATION AT STEP FOUR OF THE SEQUENTIAL EVALUATION PROCESS

At step four of the sequential evaluation process, an ALJ considers whether a claimant can engage in his or her past relevant work.[29] At this step, an ALJ must first identify the claimant's past relevant work.[30] Once identified, the ALJ classifies the skill level and exertional demands of that work. The claimant is the "primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."[31] A vocational expert may also offer evidence concerning the physical and mental demands of a claimant's past relevant work.[32]

---

[27] *Sullivan*, 493 U.S. at 531.

[28] *Id.*

[29] 20 C.F.R. § 404.1520(a)(4)(iv).

[30] 20 C.F.R. § 404.1560(b)(1) (defining past relevant work as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.").

[31] SSR 82-62, 1982 WL 31386. at *3.

[32] 20 C.F.R. § 404.1520(b)(2).

Once identified and classified, the ALJ compares the demands of the past relevant work to the claimant's current RFC. A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the claimant's current RFC can meet the demands of past relevant work.[33]

If a claimant can do his or her past relevant work, as it was actually performed or as it is generally performed in the national economy, the claimant will be found not disabled.[34] An ALJ will not consider the claimant's other vocational factors (age, education, and work experience) at this step.[35]

E. **GUIDELINES FOR THE ALJ'S EVALUATION AT STEP FIVE OF THE SEQUENTIAL EVALUATION PROCESS**

At step five of the sequential evaluation process an ALJ considers whether a claimant can make an adjustment to other work.[36] At this step, the ALJ considers a claimant's age, education, work experience and RFC.[37] If a claimant can adjust to other work, and that other work exists in significant numbers in the national economy, a claimant will be found not disabled.

---

[33] *Id.*
[34] 20 C.F.R. § 404.1560(b)(3).
[35] *Id.*
[36] 20 C.F.R. § 404.1520(a)(v).
[37] *Id.*

The Social Security Administration bears the burden at this step.[38] In order to meet that burden it has taken administrative notice of several sources of job data, including the Dictionary of Occupational Titles ("DOT") published by the Department of Labor.[39] The DOT is a "dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job."[40] It does not contain statistical information about the availability of jobs in the national economy.

The DOT, however, has not been updated in almost 30 years.[41] Despite its age, current guidance dictates that ALJs are required to consider the job descriptions in the DOT in any case where a vocational expert is used.[42]

> Because the database of job titles is so outdated, an expert's methodology for connecting job titles to reliable estimates of the number of jobs for each title is especially important. The Social Security Administration has itself acknowledged this issue and expressed an intent to update the database, but the new version has not yet arrived.[43]

---

[38] 20 C.F.R. § 404.1560(c)(2).

[39] 20 C.F.R. § 404.1566(d)(1).

[40] *Rush v. Berryhill*, No. CV 17-939, 2018 WL 4257930, at n.1 (W.D. Pa. Sept. 6, 2018) (quoting *McHerrin v. Astrue*, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010)).

[41] *See Ruenger v. Kijakazi,* 23 F.4f 760, 761-62 (7th Cir. 2022) (per curiam).

[42] SSR 00-4p, SSR 00-4p, 2000 WL 1898704, at *2.

[43] *Jones v. Comm'r of Soc. Sec.*, No. 19-CV-793-JPG, 2021 WL 457924, *8 (S.D. Il. Feb. 9, 2021) (quoting *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

Although an ALJ is required to consider information in the DOT, he or she is not required to rely on the DOT over a vocational expert.[44] Further, whenever a VE is used, the claimant "has the right to review and respond to the VE evidence before the issuance of a decision."[45]

## F.   STANDARDS GOVERNING AN ALJ'S DUTY TO DEVELOP THE RECORD

Plaintiffs, their attorneys, and the Social Security Administration each play a role in developing the evidentiary record in disability claims. "Claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability . . . claims."[46] The regulations also provide that a claimant is required to either (1) inform the ALJ about evidence requested but not yet received, or (2) provide any relevant evidence, five days or more business days before the ALJ hearing.[47]

---

[44] SSR 00-4p, 2000 WL 1898704, at *2 ("Neither the DOT nor the VE or VE evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conduct by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than the DOT information.").

[45] SSR 96-9p, 1996 WL 374185, at *9 n.8; *see e.g. Allen v. Comm'r of Soc. Sec.*, 475 F.Supp.3d 413 (M.D. Pa. Aug. 1, 2020) (remanding where an ALJ failed to address concerns about the reliability of DOT job descriptions presented in a post-hearing brief).

[46] SSR 17-4p, 2017 WL 4736894 at *2, 6.

[47] 20 C.F.R. § 404.935.

An ALJ's obligation to assist the claimant are, in large part, set out in two regulations.

First, under 20 C.F.R. § 404.1512, an ALJ is required to make "every reasonable effort" to develop a claimant's "complete medical history" before making a determination.[48] In most cases, a "complete medical history" requires development of records from the 12 months preceding the month the application for benefits was filed.[49]

Second, under 20 C.F.R. § 404.1520b, the ALJ has an obligation to develop the record where it is insufficient to resolve a claimant's application. If, after reviewing all of the relevant evidence, the ALJ concludes the record is insufficient to determine whether a claimant is disabled, the ALJ will try to resolve the inconsistency by taking additional action to develop the record.[50] That additional action may include recontacting a medical source, requesting additional evidence, asking the claimant to undergo a consultative examination, and asking the claimant or others for more information.[51]

---

[48] 20 C.F.R. § 404.1512(b).

[49] 20 C.F.R. § 404.1512(b)(ii).

[50] 20 C.F.R. § 404.1520b(b).

[51] *Id.*

### G.    Challenges to An ALJ's RFC Assessment

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. A claimant's RFC is defined as the most a claimant can still do despite his or her limitations, taking into account all of a claimant's medically determinable impairments.[52] In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe.[53] An "RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[54] The ALJ is required to discuss the claimant's ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis (8-hours per day, 5-days per week), and describe the maximum amount of each work-related activity the claimant can perform based on the evidence available in the case record.[55] The ALJ is also required to explain how any material inconsistencies in the case record were considered and resolved.[56]

---

[52] 20 C.F.R. § 404.1545.

[53] 20 C.F.R. § 404.1545.

[54] SSR 96-8p, 1996 WL 374184 at *7.

[55] *Id.*

[56] *Id.*

Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective.[57] Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps.

## H.   GUIDELINES FOR THE EVALUATION OF MEDICAL OPINIONS & PRIOR ADMINISTRATIVE MEDICAL FINDINGS

The Commissioner's regulations carefully define the sources and types of statements that can be considered "medical opinions."[58]

The regulations also recognize another type of statement that does not meet the strict definition of medical opinion, but is nonetheless evaluated under the same

---

[57] *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

[58] 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions).

framework. This type of statement is called a "prior administrative medical finding" and is, in other words, a state agency consultant's medical opinion.[59]

The regulatory framework for evaluating medical opinions and prior administrative medical findings includes both factors to guide the analysis, and very specific articulation requirements that must be met in addition to the well-established requirements that apply generally to the ALJ's decision as a whole.

This regulation directs that an ALJ's consideration of the persuasiveness of competing medical opinions and prior administrative medical findings is guided by the following factors:

(1) the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability);

(2) the extent to which the medical source's opinion is consistent with the record as a whole (consistency);

(3) length of the treatment relationship between the claimant and the medical source;

(4) the frequency of examination;

(5) the purpose of the treatment relationship;

(6) the extent of the treatment relationship;

(7) the examining relationship;

---

[59] 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding).

(8)    the specialization of the medical source; and

(9)    any other factors that tend to support or contradict the opinion.[60]

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[61] Unlike prior regulations, under the current regulatory scheme, when considering medical opinions and prior administrative medical findings, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[62]

The Commissioner's regulations also provide several "articulation" requirements. First, the ALJ is always required to explain how he or she considered the "supportability" and "consistency" of a medical source's opinion or a prior administrative finding. Second, the ALJ is only required to articulate how he or she considered the other six factors if there are two equally persuasive medical opinions about the same issue that are not exactly the same.[63] Third, if one medical source

---

[60] 20 C.F.R. § 404.1520c(c).

[61] 20 C.F.R. § 404.1520c(b)(2).

[62] 20 C.F.R. § 404.1520c(a); *see Lawrence v. Comm'r of Soc. Sec.*, No. 3:21-CV-1239, 2022 WL 17093943, at *3 (M.D. Pa. Nov. 21, 2022) (describing the regulations applicable to applications filed after March 2017 as a "paradigm shift" that abandons the prior hierarchy of medical source opinions that placed treating source opinions above all others).

[63] 20 C.F.R. § 404.1520c(b)(3).

submits multiple medical opinions, an ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis.[64] Fourth, an ALJ is not required to articulate how evidence from non-medical sources is considered based on the 20 C.F.R. § 404.1520c factors.[65] Fifth, the ALJ is not required to articulate or provide any analysis about how he or she considers statements on issues reserved to the Commissioner or decisions by other governmental or nongovernmental entities.[66]

## I.   GUIDELINES FOR THE ALJ'S SYMPTOM EVALUATION

In Social Security cases, "symptoms" are defined as the claimant's "own description of [his or her] physical or mental impairment."[67] The Social Security Regulations and Rulings set out a two-step process to evaluate a claimant's symptoms.[68]

First, the ALJ must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. If there is no medically determinable impairment, or if there is a medically determinable impairment but that impairment could not reasonably be

---

[64] 20 C.F.R. § 404.1520c(b)(1).
[65] 20 C.F.R. § 404.1520c(d).
[66] 20 C.F.R. § 404.1520b(c).
[67] 20 C.F.R. § 404.1502(n).
[68] 20 C.F.R. § 404.1529.

expected to produce the claimant's symptoms, an ALJ will not find that those symptoms affect the claimant's ability to perform work-related activities.[69] An ALJ does not consider whether the severity of an individual's symptoms is supported by the objective medical evidence at the first step of this analysis.[70]

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms caused by the claimant's medically determinable impairments.[71] SSR 16-3p explains:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities for an adult. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

> We may or may not find an individual's symptoms and related limitations consistent with the evidence in his or her record. We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions. We will

---

[69] SSR 16-3p, 2017 WL 5180304, at *4.
[70] SSR 16-3p, 2017 WL 5180304, at *3.
[71] 20 C.F.R. § 404.1529(c)(1).

evaluate an individual's symptoms considering all the evidence in his or her record.[72]

When evaluating a claimant's symptoms, an ALJ considers objective evidence, a claimant's statements about the intensity, persistence and limiting effects of his or her symptoms, statements made by medical sources in opinions and treatment records, and statements about a claimant's symptoms made by non-medical sources. This evidence is evaluated based on the following factors:

(1)    the claimant's daily activities;

(2)    the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

(3)    any factor that precipitates or aggravates the claimant's pain or other symptoms;

(4)    the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms;

(5)    any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms;

(6)    any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(7)    any other factors concerning functional limitations and restrictions due to pain or other symptoms.[73]

---

[72] 2017 WL 5180304, at *8.

[73] 20 C.F.R. § 404.1529(c)(3).

The ALJ is required to discuss the factors pertinent to the evidence of record, but will not discuss a factor where it is not relevant.[74]

Although the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[75] The ALJ is, however, required to explain which of an individual's symptoms he or she finds consistent or inconsistent with the evidence in the record.[76]

Some claimants may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other claimants with the same medical impairments, objective evidence, and non-medical evidence.[77] For this reason, district courts generally afford great deference to an ALJ's symptom evaluation.

## IV.   DISCUSSION

In his statement of errors, Plaintiff raises the following issue:

(1)   "Whether the ALJ erred in determining that appellant could perform jobs in a sedentary capacity and [thereby] erred in denying claimant's application for disability benefits." (Doc. 15, p. 4).

In the argument section of his brief, however, Plaintiff raises additional issues. We construe Plaintiff's brief as raising the following issues:

---

[74] SSR 16-3p, 2017 WL 5180304, at *8.
[75] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011).
[76] SSR 16-3p, 2017 WL 5180304, at *8.
[77] SSR 16-3, 2017 WL 5180304, at *4.

(1)     Whether the ALJ improperly limited the scope of Plaintiff's testimony during the administrative hearing.

(2)     Whether Plaintiff was prejudiced by the ALJ's decision not to hold the record open for updated medical records that post-date Plaintiff's date last insured.

(3)     Whether substantial evidence supports the ALJ's Step Three finding that Plaintiff does not meet listing 1.04(A).

(4)     Whether substantial evidence supports the ALJ's decision that Plaintiff could sit for up to six hours at one time.

(5)     Whether substantial evidence supports the ALJ's decision that Plaintiff had no significant difficulty remaining on task.

(6)     Whether substantial evidence supports the ALJ's evaluation of Plaintiff's testimony about the nature of his past relevant work.

(7)     Whether the VE testimony is reliable enough to support the ALJ's conclusion at Step Five.

We begin our analysis by summarizing the ALJ's decision, and then will address each issue raised in Plaintiff's brief.

## A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his January 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2019. (Admin. Tr. 18; Doc. 14-2, p. 19). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between August 9, 2019 (Plaintiff's alleged onset date) and December 31, 2019 (Plaintiff's date last insured) ("the relevant period"). *Id*.

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: lumbar degenerative disc disease and spondylosis. *Id*. The ALJ also identified the following medically determinable non-severe impairments: opioid dependence, pilonidal cyst, upper respiratory infection, and obesity. (Admin. Tr. 19; Doc. 14-2, p. 20).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 21; Doc. 14-2, p. 22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but he can never climb ladders, ropes or scaffolds. The claimant requires a cane for ambulation, but he can carry objects with his non-cane hand. He can frequently work at unprotected heights, moving mechanical parts, and frequently operate a motor vehicle. The claimant can work frequently in weather, humidity, wetness, extreme cold, and vibration.

(Admin. Tr. 21; Doc. 14-2, p. 22).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 26; Doc. 14-2, p. 27). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 27-28; Doc. 14-2, pp. 28-29). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: ticket counter, DOT #219.587-010; charge account clerk, DOT #205.367-014; and order maker, DOT #209.567-014. *Id*.

### B.   THE ALJ DID NOT LIMIT THE SCOPE OF PLAINTIFF'S TESTIMONY

Plaintiff seeks benefits under Title II of the Social Security Act. Therefore, he must show that he became disabled on or before his date last insured. In this case, the ALJ determined that Plaintiff's date last insured was December 31, 2019. Plaintiff does not challenge this finding.

During the January 4, 2021, administrative hearing, the ALJ asked Plaintiff several questions about his symptoms. The ALJ prefaced that discussion with the following instruction:

ALJ:        . . . . I'm gonna be asking you questions about you and your disabilities. First and foremost, I—we—I went through that.

> Second thing. We're going to be talking about a remote period of time, between August of 2018 and December of 2019. Okay? It's within that period of time that I have to find you disabled. Do you understand that?

CLMT:   Yes, sir.

ALJ:   *So, when I'm going to be talking to you, I'm going to be talking about that period of time.* It may seem strange, sir, but it's been over a year since the DLI. So, anything that's happened after the date last insured, sir, generally it isn't going to be relevant, okay?

(Admin. Tr. 41; Doc. 14-2, p. 42) (emphasis added). After asking Plaintiff a series of general questions about his contact information, height, weight, dominant hand, the status of his driver's license (and ability to drive), Plaintiff's use of a cane, educational background, and vocational history, the ALJ posed a series of more targeted questions. For example, the ALJ asked about the location and intensity of Plaintiff's pain that day, and about the medication Plaintiff was currently prescribed and its side-effects. (Admin. Tr. 50-52; Doc. 14-2, pp. 51-53). Then, the ALJ asked whether Plaintiff's pain that day was the same as Plaintiff's pain at the end of 2019. (Admin. Tr. 52; Doc. 14-2, p. 53). He also asked about Plaintiff's medications and side-effects at the end of 2019. *Id.* The ALJ also asked about Plaintiff's ability to function in 2019. (Admin. Tr. 53, 55-56; Doc. 14-2, pp. 54, 56-57). Once the ALJ finished his questions, Plaintiff's counsel was given the opportunity to ask questions and did so. (Admin. Tr. 64; Doc. 14-2, p. 65).

Page 27 of 48

Plaintiff argues "[d]uring the hearing the Administrative Law Judge indicated that he was limiting the testimony to the dates between August 9, 2018, and December 31, 2019." (Doc. 15, p. 9). Plaintiff does not cite to any portion of the record where the ALJ explicitly did so. Although the ALJ did discuss that when *he* was talking to Plaintiff it would be about the period between August 9, 2018, and December 31, 2019, he did not limit *all* testimony to that period of time. In fact, even the ALJ posed questions about Plaintiff's current symptoms, and referenced Plaintiff's responses to those questions in the decision. (Admin. Tr. 22; Doc. 14-2, p. 23) ("He said that he has pain in his neck, and it has worsened since 2019.").

Accordingly, we are not persuaded that the ALJ limited Plaintiff's testimony.

## C. PLAINTIFF WAS NOT PREJUDICED WHEN THE ALJ DECLINED TO HOLD THE RECORD OPEN

On December 21, 2020, fourteen days before the administrative hearing, Plaintiff's counsel sent a letter to the ALJ. (Admin. Tr. 279-280; Doc. 14-6, p. 81-82). In that letter, counsel reported that he was still waiting for responses from five medical providers: Wood, Hlavac, Williams, Oleski, and Talenti. *Id.* During the administrative hearing, counsel and the ALJ had the following discussion about those records:

ALJ:   Counsel, I do have your five-day letter at Exhibits 16E. Is—are all these records still outstanding?

ATTY:      Yes, Your Honor.

ALJ:       Okay.

ATTY:      A third—I wanna bring up—

ALJ:       Hang on, Counsel. I wanna go through—Dr. Wood, at Exhibit B21F, was updated on March 20th of last year [2020]. Is that correct?

ATTY:      Yes, Your Honor.

ALJ:       I see Dr. Hlavac, H-L-A-V-A-C, Exhibit B17F. His records were updated on March 19th, 2020, also. Is that correct?

ATTY:      Yes, Your Honor.

ALJ:       And Talenti, that would be his gastroenterologist, Exhibit B25F. These records were updated on December 4th, 2020. Is that correct?

ATTY:      Yes, Your Honor.

ALJ:       Okay. And Dr. Williams, who was part of Holly [phonetic] Family Health. They were also updated in August 2020. Is that correct?

ATTY:      Yes, Your Honor.

ALJ:       Okay. Who's Dr. Oleski?

ATTY:      She is with Northeast Rehabilitation and Associates Judge. She is a physiatrist.

ALJ:       Okay. And I—should be Northeast Rehab.

ATTY:      Sheryl Oleski.

ALJ:       Okay. I'm looking—hang on—okay—I'm just looking right now. Hang on. Okay. Stay with just the providers I

mentioned. Wood, Hlavac, Williams, and Talenti. It would appear based upon what I'm seeing, is that all of these records are gonna be after the date last insured of December 31st, 2019. Is that correct?

ATTY:    Yes, Your Honor.

ALJ:    I'm not going to wait for those additional records. Dr. Oleski, are those also records after the DLI?

ATTY:    Yes, Your Honor.

ALJ:    I'm not going to wait for those, either. Is there any other outstanding relevant evidence that's not in the file, that you're aware of?

ATTY:    No, Your Honor.

(Admin. Tr. 39-40; Doc. 14-2, pp. 40-41).

On January 14, 2021, ten days after the hearing, the ALJ issued his written decision. In that decision, the ALJ did consider the available medical records that post-dated Plaintiff's date last insured. He cited evidence from January 2020 that Plaintiff returned to physical therapy due to ongoing thoracic and lumbar pain, had a positive straight leg raise, and had reduced strength that ranged from 3+ to 4-/5 due to pain. (Admin. Tr. 23; Doc. 14-2, p. 24). The ALJ also considered primary care records from February 2020, May 2020, and November 2020. (Admin. Tr. 24; Doc. 14-2, p. 25).

Plaintiff sought further review and on February 18, 2021, the Appeals Council sent a letter to Plaintiff inviting him to send a statement about the facts and law of

Page 30 of 48

this case "or additional evidence," and gave Plaintiff twenty-five days to do so. (Admin. Tr. 8; Doc. 14-2, p. 10). Plaintiff did submit new evidence, but it was not treatment records from any of the five sources listed in the December 21, 2020, letter. Instead, Plaintiff submitted a one-page letter from Dr. Kovalchick dated March 10, 2021 (almost eight weeks after the ALJ decision was issued). (Admin. Tr. 7; Doc. 14-2, p. 8).

Plaintiff argues:

On December 21, 2020, correspondence was submitted to the Social Security Administration notifying the Judge that five (5) different medical records had not as of yet been received by Claimant's counsel's office and that Claimant's counsel had sought an extension of time to submit these records at a later time if they were not received in time.

. . . . He indicated that he will not consider any records before or after [August 9, 2018 and December 31, 2019].

It is Claimant's position that all records should have been allowed and/or considered in that they would support a continued history of the Claimant's conditions which continued into the period the Administrative Law Judge evaluated and continuing on thereafter. By failing to consider these records and allowing the Claimant to present same into evidence the Claimant became severely prejudiced.

(Doc. 15, pp. 9-10).

In another section of his brief, Plaintiff argues:

It is Claimant's position that his condition has continued to worsen resulting in chronic pain in his low back, radicular symptoms as well as additional limitations in function due to his conditions. Further, his opioid dependency also increased the likelihood of also being an important factor in his limitations and his ability to work. It is asserted

that his records would also support Claimant's chronic low back pain and leg pain would have expanded upon Claimant's lumbar disc ruptures and three (3) prior lumbar surgeries over a span of five (5) years which proved to be unsuccessful in alleviating his back and leg symptoms. Further, these records would of [sic] also helped expand on the MRI's that were recently done which would establish that the scar tissue was effecting his nerves going into the right leg. In addition, these records would of [sic] also addressed the worsening of Claimant's condition to perform any kind of gainful employment on a sustained basis. It would address the issues of his inability to perform repetitive movements such as twisting, lifting and his requirement to change positions frequently as his pain increased from sitting too long.

(Doc. 15, p. 10). We construe this argument as an allegation that the record before the ALJ was insufficient, and that the ALJ did not meet his obligation under 20 C.F.R. § 404.1520b to develop that record.

In response, the Commissioner asserts that the record in this case was adequately developed, even without the evidence from these five sources. In support of her position, the Commissioner argues that the evidence should not be considered because Plaintiff did not comply with 20 C.F.R. § 404.935. She also argues that Plaintiff has not shown that the failure to admit this evidence resulted in prejudice to his claim.

We find Plaintiff complied with 20 C.F.R. § 404.935(a). He, through counsel, submitted a letter more than five business days before the administrative hearing that he was "still waiting" for responses from five medical providers. (Admin. Tr. 279;

Doc. 14-6, p. 81). The regulation does not require production. Notification is sufficient. Therefore, we find that Plaintiff did comply with 20 C.F.R. § 404.935(a).

We are persuaded, however, by the Commissioner's argument that the failure to admit this evidence did not result in prejudice. This Court has held that, to secure a remand based on the ALJ's failure to develop the record, a plaintiff is required to show that the ALJ's error prejudiced the plaintiff.[78] We find no evidence of prejudice in this case.

Nothing in this record suggests that the missing evidence relates to the period of time relevant to Plaintiff's application. Plaintiff admits that all of the evidence from the five providers post-dated Plaintiff's date last insured. The Court cannot review this evidence for itself because it was never produced. Plaintiff has offered only general allegations that the records show that Plaintiff's condition continued to worsen after his date last insured. These general allegations are not enough to show

---

[78] *Herring v. Colvin*, 181 F.Supp.3d 258, 272-273 (M.D. Pa. 2014) (finding that "allowing a claimant to secure a remand for failing to develop the record without any showing of prejudice would allow a back door around the materiality requirement of a sentence six remand."); *see e.g.*, *Cosme v. Comm'r of Soc. Sec.*, No. 18-CV-01327, 2020 WL 2079284, at *5 (D.N.J. Apr. 30, 2020) (declining to remand where a plaintiff did not proffer the missing records or otherwise demonstrate specific prejudice due to an omission from the ALJ's record) *aff'd by* 845 F. App'x 128 (3d Cir. 2021).

prejudice. Accordingly, we are not persuaded that remand is required based on the

ALJ's alleged failure to meet his obligation under 20 C.F.R. § 404.1520b.

### D. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S EVALUATION AT STEP THREE

To satisfy Listing 1.04(A) a claimant must show:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[79]

At step three of the Sequential Evaluation Process, the ALJ found that

Plaintiff's back impairment did not meet or medically equal Listing 1.04. In doing

so the ALJ found:

> The claimant's degenerative disc disease and spondylosis was considered under listing 1.04. Listing 1.04 requires evidence of the following: nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested

---

[79] 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04(A).

by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in section 1.00B2b of Appendix 1.

As discussed in more detail below, imaging of the claimant's spine revealed multiple disc bulges and herniations [Ex. B6F/19-20]. However, treatment records do not reflect evidence of nerve root compression with motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss; spinal arachnoiditis; nor spinal stenosis resulting in pseudoclaudication resulting in inability to ambulate effectively [Ex. B1F-B26F]. In addition, records indicate the claimant ambulated effectively with a single point cane [Ex. B11F, B25F, and B26F]. Based on the unremarkable results of these examinations, the claimant's spine disorder does not meet listing 1.04.

(Admin. Tr. 21; Doc. 14-2, pp. 22).

In his brief, Plaintiff argues:

The Claimant's degenerative disc disease and spondylosis was considered under listing 1.04. There was clear evidence of nerve root compression characterized as neuroanatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory loss and positive straight leg raising test as well as a long history of failed operations on his back resulting in severe burning and painful dysesthesias. The MRI's and prior history of back surgeries clearly supported multiple disc bulges and herniations. The nerve root compressions with motor loss was supported by Claimant's inability to ambulate without a cane. Therefore the ALJ was presented with uncontroverted medical evidence from the Claimant.

(Doc. 15, p. 8). We construe this as an argument that Plaintiff should have been found disabled at step three because he met listing 1.04(A), and are not persuaded.

Plaintiff argues that there is "clear evidence" that he meets this listing. He does not, however, cite to the portions of the administrative record that support his

position. Plaintiff references an MRI, "prior history of back surgeries," and Plaintiff's use of a cane for ambulation. Plaintiff did have an MRI in 2018 that showed multiple disc bulges and herniations and marked narrowing of the right neural foramen at L5-S1, and did undergo back surgeries in 2011 (lumbar surgery), 2014 (lumbar surgery at L1-S5), and 2015 (lower back cyst and bone spur removal). (Admin. Tr. 458, 1197; Doc. 14-7, pp. 174, 913). These findings suggest nerve root compression may be present. However, they do not show every requirement of the listing.

To the extent Plaintiff argues that his cane use establishes the requisite "motor loss" by showing muscle weakness, we are not persuaded. The objective findings the ALJ cites throughout his decision substantially support his conclusion that the degree of muscle weakness at issue in this case does not satisfy the listing prior to Plaintiff's date last insured. The ALJ noted that, on October 15, 2018, Plaintiff's lower extremity strength was 4/5. (Admin. Tr. 663; Doc. 14-7, p. 379). On October 18, 2018, Plaintiff's lower extremity strength was 5/5. (Admin. Tr. 23; Doc. 14-2, p. 24) (citing Admin. Tr. 583; Doc. 14-7, p. 299). In December 2018, Plaintiff had 5/5 strength in his lower limbs. *Id.* (citing Admin. Tr. 588; Doc. 14-7, p. 304). In March 2019, Plaintiff had 5/5 strength. *Id.* (citing Admin. Tr. 623; Doc. 14-7, p. 339). In August 2019, Plaintiff was able to do a one-quarter squat, he had no atrophy, and

had 4/5 strength in his lower extremities. (Admin. Tr. 24; Doc. 14-2, p. 25) (citing Admin. Tr. 676-680; Doc. 14-7, pp. 392-96). He had moderate difficulty rising from a chair and was unable to walk on his heels or toes. *Id.* At two exams that took place the month after Plaintiff's insured status expired, Plaintiff had 3+ to 4-/5 strength. (Admin. Tr. 23; Doc. 14-2, p. 24) (citing Admin. Tr. 1137, 1144; Doc. 14-7, pp. 853-860).

These records demonstrate that, before Plaintiff's date last insured, his muscle grade strength was 4/5 or 5/5. Isolated reports of slight muscle weakness are not enough to satisfy Listing 1.04(A).[80] Given that the requirements of the Listings must be strictly construed, we find no error in the ALJ's assessment that Plaintiff does not meet this Listing. The ALJ's decision shows that he considered the relevant evidence, and substantial evidence supports his conclusion that Plaintiff did not have the requisite muscle weakness to show motor deficits during the relevant period. Evidence of Plaintiff's cane use, without more, is not an adequate basis to disturb that conclusion.

---

[80] *See Ayala v. Kijakazi*, 620 F.Supp.3d 6, 29 (S.D.N.Y. 2022) (collecting cases where courts held that occasional diminished motor strength does not satisfy Listing 1.04(A), and that muscle grade strength of 4/5 is insufficient to satisfy Listing 1.04(A)).

### E.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT

In his brief, Plaintiff suggests that the ALJ's RFC assessment does not adequately account for his inability to sit for long periods or his inability to concentrate. We will address each of these arguments separately below.

### 1.  The ALJ Adequately Evaluated Plaintiff's Ability to Sit

Plaintiff argues:

> It should also be noted that in reviewing the decision of the ALJ he considered in part Tara Cywinski, CRNP's opinion that Claimant could sit for one half hour for a total of four (4) hours and stand and walk for fifteen (15) minutes for a total of two (2) hours in an eight (8) hour work day. This description is clearly outside the scope of a sedentary position from a medical standpoint. Additionally, the ALJ failed to consider the clear medical evidence of Claimant's treating physicians which indicated that the Claimant was not even capable of sitting for a six (6) hour period based upon his ongoing discomfort in his back and his ability to utilize a cane.

(Doc. 15, p. 7).

The Commissioner responds that "Plaintiff does not develop this argument or directly challenge the ALJ's analysis of Nurse Cywinski's opinion, and as such, to the extent this argument can be construed as attacking the RFC analysis or medical opinion analysis, it is waived." (Doc. 20, p. 19). The Commissioner argues in the alternative that substantial evidence supports the ALJ's evaluation of CRNP Cywinski's findings. (Doc. 20, pp. 22-23).

We begin our analysis with a summary of the relevant medical opinions and prior administrative medical findings. One non-treating consultative examiner (CRNP Cywinski) gave an opinion about Plaintiff's physical limitations, and two state agency consultants (Dr. Scovern and Dr. Chung) issued administrative medical findings at the initial and reconsideration levels about Plaintiff's physical limitations. One treating source (Dr. Kovalchick) wrote in treatment records that Plaintiff "remains disabled fully from his pain issues." (Admin. Tr. 1069; Doc. 14-7, p. 785).

CRNP Cywinski assessed that Plaintiff could sit for only four hours per eight-hour workday. Dr. Scovern and Dr. Chung assessed that Plaintiff could sit for six hours in an eight-hour workday. The ALJ found that CRNP Cywinski overestimated Plaintiff's sitting, standing and walking limitations because physical exams "revealed the claimant's lower extremity strength generally ranged from 4/5 to 5/5, he had no focal deficits, and his sensation was intact. [Ex. B11F, B25F, and B26F]. Furthermore, the claimant's straight leg raise test was only mildly positive bilaterally in March 2019 [Ex. B8F/26]." (Admin. Tr. 25; Doc. 14-2, p. 26). He found that the two state agency consultant opinions were persuasive because "a consultative medical exam revealed the claimant's bilateral strength was 5/5 in his upper and 4/5 in his lower extremities, [and] he had no muscle atrophy." (Admin. Tr. 25-26; Doc.

14-2, pp. 26-27). Dr. Kovalchick's statement was not considered under 20 C.F.R. § 404.1520c because it addressed an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b.[81]

First, to the extent Plaintiff argues that the ALJ's analysis of the medical opinions under 20 C.F.R. § 404.1520c is defective, this issue has not been adequately developed in the briefs.[82] Absent a more specific argument, we find no error with the ALJ's evaluation of these medical opinions.

Second, to the extent Plaintiff argues that substantial evidence does not support the RFC assessment, we are similarly not persuaded. Two state agency consultant opinions support the ALJ's conclusion that Plaintiff would be able to sit for up to six hours at one time. These opinions offer substantial support for the ALJ's assessment Plaintiff could engage in sedentary work (requiring Plaintiff to sit for up to six hours).

---

[81] After the ALJ decision was issued, Plaintiff submitted a March 10, 2021 letter from Dr. Kovalchick. (Admin. Tr. 5; Doc. 14-2, p. 8). In the letter, Dr. Kovalchik opined that Plaintiff "is required to change positions frequently as he has increased pain if he sits too long." *Id.* This opinion cannot be considered in evaluating a challenge under sentence four of 42 U.S.C. § 405(g). We will address Plaintiff's argument that the letter should be considered under sentence six of 42 U.S.C. § 405(g) separately.

[82] Plaintiff also suggests that "treating physicians" assessed Plaintiff could not sit for more than four hours. He did not identify those physicians and has not directed the court to any such opinion. Our own review of the record suggests that no treating source offered a functional assessment of Plaintiff's ability to sit.

**2.     The ALJ Adequately Evaluated Plaintiff's Ability to Remain on Task**

Plaintiff testified that he naps three or four times per day because his pain makes it difficult to sleep through the night. (Admin. Tr. 63; Doc. 14-2, p. 64). During the administrative hearing, counsel suggested that Plaintiff's daytime fatigue and need for naps, if credited, would result in Plaintiff being off task 15 to 20 percent of the workday. (Admin. Tr. 71; Doc. 14-2, p. 72). No medical source assessed whether, or for what percentage of the workday, Plaintiff would be off task due to pain or fatigue.

Plaintiff argues:

> Evidence and information was presented of the Claimant's ability to be off task at least fifteen (15%) percent to twenty (20%) percent of each work day. Further, there was clear testimony that the Claimant would be off task even further. The ALJ failed to even address this issue, disregarding and ignoring Claimant's restrictions, his lack of function and inability to carry on his daily activities of assisted daily living.

(Doc. 15, p. 11).

In response, the Commissioner reports that the only support for a limitation to Plaintiff's ability to remain on task is in Plaintiff's administrative hearing testimony about daytime fatigue. (Doc. 20, p. 28). She argues that the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical evidence, and that substantial evidence

supports this finding. (Doc. 20, pp. 28-29). Our own review of the ALJ's decision suggests that Plaintiff's statements about the intensity and limiting effects of his pain and daytime fatigue were indeed discounted. Plaintiff has not offered any persuasive argument as to why the ALJ's evaluation of Plaintiff's statements under 20 C.F.R. § 404.1529 was defective.

### F.    THE ALJ FOUND IN PLAINTIFF'S FAVOR AT STEP FOUR

During the administrative hearing, Plaintiff testified about the nature of his past relevant work as he actually performed it. (Admin. Tr. 47-49; Doc. 14-2, pp. 48-50). Based on this testimony a vocational expert determined that Plaintiff's past work was a composite position. (Admin. Tr. 69-70; Doc. 14-2, pp. 70-71). At step four, the ALJ relied on the VE's testimony and classified Plaintiff's past relevant work as:

> A composite position as a lumber handler, heavy and unskilled as defined by the Dictionary of Occupational Titles (DOT), DOT# 922.687-070, Specific Vocational Preparation (SVP) 2; a machine mechanic, DOT# 638.281-014, medium and skilled, SVP6; and lumber scaler, DOT# 221.487-010, medium and semiskilled, SVP 3. The vocational expert testified that the claimant's composite position was performed at the very heavy level [Hearing Testimony]. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period.

(Admin. Tr. 26; Doc. 14-2, p. 27). The ALJ found in Plaintiff's favor at step four and concluded that the claimant (limited to sedentary work) would be unable to perform this composite position as actually or generally performed. *Id.*

Plaintiff argues that the ALJ "failed to credit the Appellant's testimony as a required source for *vocational* documentation." (Doc. 15, p. 8) (emphasis added). We construe this as an argument that the ALJ's analysis at step four is defective.

We are not persuaded that remand is required for further evaluation of Plaintiff's testimony about his past relevant work. The ALJ found in Plaintiff's favor when he concluded that Plaintiff could not engage in his past relevant work. Thus, even if some of Plaintiff's testimony about his prior work was improperly discounted, there is no possibility further consideration of that testimony about Plaintiff's past relevant work could result in a more favorable outcome.

Accordingly, remand is not required for further consideration of Plaintiff's testimony about his past relevant work.

### G.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION AT STEP FIVE

Plaintiff argues:

In the instant matter, the uncontroverted evidence from the Appellant established that he was limited from even performing sedentary work. The vocational expert examined by the ALJ relied upon three (3) separate jobs, namely:

1. Ticket Counter, DOT # 219.587-010, sedentary and unskilled, SVP 2;
2. Charge Account Clerk, DOT # 205.367-014, sedentary and unskilled, SVP 2; and
3. Order Maker, DOT # 209.567-014, sedentary unskilled, SVP 2.

A review of the three (3) jobs to which the ALJ relied upon based upon the testimony of the vocational counselor clearly were jobs that were not within the abilities of Claimant to perform.

First, each job relied upon by the vocational expert were last updated in 1997 and were considered seasonal. Each job was over forty-five (45) years old and never have been updated to meet with current job requirements and job demands. The jobs do not take into account the online and computer basis for similar positions. Specifically, the ticket counter position being a forty-five (45) year old position did not take into account the office setting and did not account for Claimant's ability to sit or stand. Further, there is no such position under DOT #209.567-014 as an order maker. The vocational counselor was inaccurate in relying upon said position. Further, if DOT #209.567-014 job is considered a clerk for the food and beverage industry, based upon modern economic standards and technology, said job does not exist in the current vocational job opportunities. Based upon the above the Judge erred in relying upon the vocational experts testimony based upon the fact that the jobs no longer existed in the economy and were outdated. Therefore said jobs should not have been considered. There was no evidence in the national economy that Claimant could perform said jobs.

. . . .

The Appellant also asserts that, any hypothetical jobs, identified by the DOT as "available" are a fallacy since the DOT has not been updated since 1991. Reliance on the DOT is inherently flawed and relies on invalid scientific data (e.g. it is more than 15 years old and no longer relevant to the time period of the relevant work history of 15 years). See *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

Based upon that premise the jobs submitted by the vocational counselor being over forty-five (45) years old clearly under the designation supplied by the vocational counselor clearly should not have been considered as available.

Based upon the above the Commissioner cannot meet the shifting burden that other work exists in significant numbers in the national economy that Claimant can do, given the residual functional capacity, age, education and work experience. See 20 C.F.R. 404.1512(g), 404.1520(c), 416.912(g) and 416.960(c).

(Doc. 15, pp. 6-8).

Also in his brief, Plaintiff argues:

No hypothetical was ever presented by the ALJ as to the variant in his decision as to the Claimant being off task and his inability to perform sedentary work.

(Doc. 15, p. 11).

We construe these arguments in Plaintiff's brief as a challenge to the ALJ's findings at step five. Plaintiff contends that: (1) the DOT jobs the VE identified do not exist in significant numbers in the national economy; (2) even if the jobs exist in significant numbers, Plaintiff cannot meet the exertional demands of the occupations at issue; and (3) substantial evidence does not support the ALJ's conclusion at step five because neither the RFC assessment nor the hypothetical question posed to the VE account for Plaintiff's credibly established limitation in remaining on task. We will address each argument separately below.

### 1.   Plaintiff Has Not Demonstrated That the Job Data Or VE Testimony Is Inaccurate

In this case, Plaintiff is challenging both the reliability of DOT job descriptions and the VE's testimony about one particular job "Order Maker." He contends that none of the positions identified by the VE or cited by the ALJ exist in the national economy.

With respect to Plaintiff's argument that the job description contained in the DOT are unreliable, we are not persuaded. Plaintiff did not object to the VE's testimony at the hearing. Plaintiff did not inquire about the method used to determine whether the jobs cited existed in the national economy. Plaintiff did not ask for the record to be held open for a post-hearing brief on this issue. Plaintiff has not presented any evidence about the availability of these jobs to this Court. Absent any objection from Plaintiff, the ALJ relied on what is, by regulation, a reliable source of vocational information. Accordingly, we find no error.

With respect to Plaintiff's allegation that the job "Order Maker" identified in the ALJ's decision does not appear at #209.567-014, he is correct. This occupation is listed in the DOT as "Order Clerk, Food and Beverage."[83] We note, however, that the VE correctly identified this position as an "Order Clerk" in her testimony.

---

[83] 1991 WL 671794.

(Admin. Tr. 71; Doc. 14-2, p. 72). There is little doubt that the statistical data provided is for the occupation of Order Clerk. We are not persuaded that the scrivener's error of identifying the position of "Order Clerk" as "Order Maker" in the ALJ decision is likely to affect the outcome in this case. Therefore, we find this error is not a basis for remand.

### 2.      The Occupations Identified In the ALJ's Decision Are Appropriate

Next, Plaintiff argues that he cannot do sedentary work, and therefore cannot do the jobs the VE identified because he cannot sit for six hours and cannot remain on task. This is essentially a challenge to the RFC assessment itself. As discussed in Sections IV(E)(1) and (2) of this opinion, substantial evidence supports the ALJ's decision that these limitations were not credibly established.

### 3.      The ALJ's Hypothetical Question is Appropriate

Plaintiff argues that the ALJ should be precluded from relying on the VE's response to the first (and only) hypothetical question asked because that question did not accurately represent all of Plaintiff's credibly established limitations. Plaintiff suggests that his sitting limitation and off task limitation were improperly excluded. We are not persuaded. As discussed in Sections IV(E)(1) and (2) of this opinion, substantial evidence supports the ALJ's decision that these limitations were not credibly established.

## V.    CONCLUSION

Accordingly, we find that Plaintiff's request for relief is DENIED as follows:

(1)    The final decision of the Commissioner is AFFIRMED.

(2)    Final judgment will be issued in favor of the Commissioner.

(3)    Appropriate Orders will be issued.

Date: May 30, 2023                                BY THE COURT

                                                  *s/William I. Arbuckle*
                                                  William I. Arbuckle
                                                  U.S. Magistrate Judge